IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
PATRICIA SCHWARTZ             :
                              :
        Plaintiff             :   CIVIL ACTION
                              :
        vs.                   :
                              :   NO. 15-CV-3938
CREDIT ONE FINANCIAL, d/b/a   :
CREDIT ONE BANK               :
                              :
        Defendant             :
```

**MEMORANDUM AND ORDER**

**JOYNER, J.**                                   **October 14, 2015**

    This case has been brought before the Court on Motion of Defendant Credit One Financial, d/b/a Credit One Bank ("Credit One") to Dismiss Plaintiff's Complaint for lack of subject matter jurisdiction and to Compel Arbitration.  For the reasons which follow, the motion is denied.

**Factual Background**

    Plaintiff instituted this action on July 16, 2014 against Defendant Credit One pursuant to the provisions of the Telephone Consumer Protection Act, 47 U.S.C. §227, *et. seq*.  In her complaint, Plaintiff alleges that Defendant violated Section 227(b)(1)(A) of the Act by repeatedly using an automatic telephone dialing system or automatic/pre-recorded messages to call her on her cell phone about an account belonging to her

son.[1]  (Complaint, ¶s 10, 14, 16-17, 20).  According to Plaintiff, these calls occurred between September and November, 2014 and continued after Plaintiff informed Defendant that her son did not live with her, and despite her having directed Defendant to stop calling her cell phone and to remove her cell phone number from its system.  (Complaint, ¶s 18-21).   Plaintiff

---

[1]  In relevant part, §227(b)(1)(A) provides:

**(b) Restrictions on use of automated telephone equipment.**

> (1) Prohibitions.  It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States –
>
>> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice -
>>
>>> ...
>>>
>>> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call; ...

Under §227(b)(3),

> A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State -
>
>> (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
>>
>> (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
>>
>> (C) both such actions.

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

seeks to recover actual, statutory and treble damages for these alleged violations as well as injunctive relief pursuant to 47 U.S.C. §227(b)(3).

By the motion now pending before the Court, Defendant seeks the dismissal of the complaint and to compel Plaintiff to arbitrate her claims against it. Alternatively, Defendant moves to stay these proceedings pending arbitration. In so arguing, Defendant contends that Plaintiff "agreed to binding arbitration of any and all disputes arising out of her Credit One credit card account" which she opened on or about March 3, 2014. (Defendant's Memorandum of Law in Support of Motion to Dismiss and Compel Arbitration, at p. 2). Plaintiff rejoins that inasmuch as her cause of action against Defendant is not premised upon calls which Credit One made regarding *her* account, she is not required to arbitrate this matter.

### **Standards Governing Motions to Compel Arbitration**

Until 2013, Third Circuit precedent was unclear on the standard for district courts to apply when determining whether arbitration was properly compelled. Indeed, prior to Guidotti v. Legal Helpers Debt Resolution, 716 F.3d 764 (3d Cir. 2013), some decisions supported "the traditional practice of treating a motion to compel arbitration as a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) ...," while others provided that "'when considering a

3

motion to compel arbitration a district court should' employ 'the standard used in resolving summary judgment motions pursuant to Rule 56 of the Federal Rules of Civil Procedure.'" <u>Guidotti</u>, 716 F.3d at 771(quoting and citing <u>Kaneff v. Del. Title Loans, Inc.</u>, 587 F.3d 616, 620 (3d Cir. 2009), <u>Palcko v. Airborne Express, Inc.</u>, 372 F.3d 588, 597 (3d Cir. 2004) and <u>Par-Knit Mills, Inc. V. Stockbridge Fabrics Co., Ltd.</u>, 636 F.2d 51, 54 (3d Cir. 1980)). Recognizing that the inconsistent pronouncements on the applicable standard could be attributable at least in part to the competing purposes of the Federal Arbitration Act (*i.e.*, the sometimes inapposite goals of speedy and efficient dispute resolution vs. the other important aim of enforcement of private agreements), the Third Circuit in <u>Guidotti</u> determined that its split pronouncements were reconcilable. Now,

> ... when it is apparent, "based on the face of a complaint, and documents relied upon in the complaint," that certain of a party's claims "are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." ... But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, "then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on the question." After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard. In the event that summary judgment is not warranted because "the party opposing arbitration can demonstrate, by means of citations to the record," that there is "a genuine dispute as to the enforceability of the arbitration clause," the "court may then proceed summarily to a trial regarding the making of

>the arbitration agreement or the failure, neglect, or refusal to perform the same, as Section 4 of the FAA envisions."

Id, at 776 (quoting Somerset Consulting, LLC v. United Capital Lenders, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011) and 9 U.S.C. §4). See also, Alder Run Land LP v. Northeast Natural Energy, LLC, No. 14-2739, 2015 U.S. App. LEXIS 13968 at *6 (3d Cir. Aug. 10, 2015)(same). Stated otherwise, "if the motion to compel arbitration is not based on a complaint 'with the requisite clarity' to establish arbitrability or 'the opposing party has come forth with reliable evidence that is more than a naked assertion that it did not intend to be bound by the arbitration, even though on the face of the pleadings it appears that it did,' resort to discovery and Rule 56 is proper." Sanford v. Bracewell & Guiliani, LLP, No. 14-1763, 2015 U.S. App. LEXIS 11482 at *7 (3d Cir. July 2, 2015)(quoting Guidotti, 716 F.3d at 774).

## Discussion

It is generally recognized that, by enacting the Federal Arbitration Act, 9 U.S.C. §1, *et. seq.*, Congress sought to overcome a longstanding judicial hostility and resistance to arbitration agreements and to declare a national policy favoring arbitration. Nitro-Lift Technologies, LLC v. Howard, 133 S. Ct. 500, 503, 184 L. Ed. 2d 328, 332 (2012); Buckeye CheckCashing, Inc. v. Cardegna, 546 U.S. 440, 443, 126 S. Ct. 1204, 1207, 163 L. Ed. 2d 1038 (2006); Green Tree Financial Corporation - Alabama

v. Randolph, 531 U.S. 79, 89, 121 S. Ct. 513, 521, 148 L. Ed. 2d 373, 382 (2000).  In furtherance of that objective, 9 U.S.C. §2 states:

> A written provision in any maritime transaction or contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration, an existing controversy arising out of such a contract, transaction or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

"This text reflects the overarching principle that arbitration is a matter of contract ... [and] consistent with that text, courts must 'rigorously enforce arbitration agreements according to their terms, ... including terms that 'specify *with whom* the parties choose to arbitrate their disputes ... and the rules under which that arbitration will be conducted.'" American Express Company v. Italian Colors Restaurant, 133 S. Ct. 2304, 2309, 186 L. Ed. 2d 417, 424 (2013)(emphasis in original and quoting, *inter alia*, Stolt-Nielsen, S.A. v. Animal Feeds International Corp., 559 U.S. 662, 683, 130 S. Ct. 1758, 176 L. Ed. 2d 605 (2010), Volt Information Sciences, Inc. v. Board of Trustees of Leland Standford Junior Univ., 489 U.S. 468, 479, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989) and Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985)).  The Supreme Court has further "found that by its terms 'the Act leaves no place for the exercise of discretion by

a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" KPMG, LLC v. Cocci, 132 S. Ct. 23, 25, 181 L. Ed. 2d 323, 326-327 (2011)(quoting Dean Witter v. Byrd, 470 U.S. at 218)(emphasis in original).

However, as these precedents suggest, "whether parties have agreed to 'submit a particular dispute to arbitration is typically an issue for judicial determination.'" Granite Rock Co. v. International Brotherhood of Teamsters, 561 U.S. 287, 296, 130 S. Ct. 2847, 2855-2856, 177 L. Ed. 2d 567 (2010)(quoting Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002)). When deciding whether the parties agreed to arbitrate a certain matter, courts generally should apply ordinary principles that govern the formation of contracts. Id,(citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995)). Such principles typically concern the scope of the arbitration clause and its enforceability and always include whether the clause was agreed to and may include when that agreement was formed. Id, 561 U.S. at 297, 130 S. Ct. at 2856; Parilla v. IAP Worldwide Services, VI, Inc., 368 F.3d 269, 275-276 (3d Cir. 2004); Medtronic Ave, Inc. v. Advanced Cardiovascular Systems, Inc., 247 F.3d 44, 54 (3d Cir. 2001). In determining whether the parties

agreed to arbitrate, the courts are to "turn to ordinary, state-law principles that govern the formation of contracts."  <u>Kirleis v. Dickie, McCamey & Chilcote, P.C.</u>, 560 F.3d 156, 160 (3d Cir. 2009)(quoting <u>First Options</u>, <u>supra</u>.).  "Under Pennsylvania law, contract formation requires: (1) a mutual manifestation of an intention to be bound, (2) terms sufficiently definite to be enforced, and (3) consideration."  <u>Id</u>.

In this case, Defendant has produced evidence that on or about March 3, 2014 Plaintiff opened a credit card account with it, at which time she listed a primary and secondary telephone number, and that contained within that cardholder agreement are the following clauses which provide in relevant part:

> **19.  COMMUNICATIONS:** You are providing express written permission authorizing Credit One Bank or its agents to contact you at any phone number (including mobile, cellular/wireless, or similar devices) or email address you provide at anytime, for any lawful purpose.  The ways in which we may contact you include live operator, automatic telephone dialing systems (auto-dialer), prerecorded message, text message or email.  Phone numbers and email addresses you provide include those you give to us, those from which you contact us or which we obtain through other means.  Such lawful purposes include, but are not limited to: obtaining information; activation of the card for verification and identification purposes; account transactions or servicing related matters; suspected fraud or identity theft; collection on the Account; and providing information about special products and services.  You agree to pay any fee(s) or charge(s) that you may incur for incoming communications from us or outgoing communications to us, to or from any such number or email address, without reimbursement from us.
>
> ...
>
> **ARBITRATION**

**PLEASE READ THIS PROVISION OF OUR CARD AGREEMENT CAREFULLY. IT PROVIDES THAT EITHER YOU OR WE CAN REQUIRE THAT ANY CONTROVERSY OR DISPUTE BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING.  IN ARBITRATION, A DISPUTE IS RESOLVED BY A NEUTRAL ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN RULES APPLICABLE IN COURT.  IN ARBITRATION, YOU CHOOSE TO HAVE A HEARING AND BE REPRESENTED BY COUNSEL.**

*Agreement to Arbitrate:*

You and we agree that either you or we may, without the other's consent, require that any controversy or dispute between you and us (all of which are called "Claims"), be submitted to mandatory, binding arbitration.  This arbitration provision is made pursuant to a transaction involving interstate commerce, and shall be governed by, and enforceable under, the Federal Arbitration Act (the "FAA"), 9 U.S.C. §1 et seq. and (to the extent State law is applicable,) the State law governing this Agreement.

*Claims Covered:*

* Claims subject to arbitration include, but are not limited to, disputes relating to the establishment, terms, treatment, operation, handling, limitations on or termination of your account; any disclosures or other documents or communications relating to your account; any transactions or attempted transactions involving your account, whether authorized or not; billing, billing errors, credit reporting, the posting of transactions, payment or credits, or collections matters relating to your account; services or benefits programs relating to your account, whether or not they are offered, introduced sold or provided by us; advertisements, promotions, or oral or written statements related to (or preceding the opening of) your account, goods or services financed under your account, or the terms of financing the application, enforceability or interpretation of this Agreement, including this arbitration provision; and any other matters relating to your account, a prior related account, or the resulting relationships between you and us. ...

* Claims subject to arbitration include not only Claims made directly by you, but also Claims made by anyone connected

with you or claiming through you, such as a co-applicant or authorized user of your account, your agent, representative or heirs, or a trustee in bankruptcy.  Similarly Claims subject to arbitration include not only Claims that relate directly to us, a parent company, affiliated company, and any predecessors and successors and the employees, officers and directors of all these entities), but also Claims for which we may be directly or indirectly liable, even if we are not properly named at the time the Claim is made.

* Claims subject to arbitration include Claims based on any theory of law, any contract, statute, regulation, ordinance, tort (including fraud or any intentional tort), common law, constitutional provision, respondeat superior, agency or other doctrine concerning liability for other persons, custom or course of dealing or any other legal or equitable ground including any claim for injunctive or declaratory relief).  Claims subject to arbitration include Claims based on any allegations of fact, including an alleged act, inaction, omission, suppression, representation, statement, obligation, duty, right, condition, status or relationship.

* Claims subject to arbitration include Claims that arose in the past, or arise in the present or future.  Claims are subject to arbitration whether they are made independently or with other claims in proceedings involving you, us or others.  Claims subject to arbitration include Claims that are made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise, and a party who initiates a proceeding in court may elect arbitration with respect to any Claim(s) advanced in the lawsuit by any other party or parties.  Claims subject to arbitration include Claims made as part of a class action or other representative action, and the arbitration of such Claims must proceed on an individual basis.

* If you or we require arbitration of a particular Claim, neither you, we, nor any other person may pursue the Claim in any litigation, whether as a class action, private attorney general action, other representative action or otherwise.

* Claims are not subject to arbitration if they are filed by you or us in a small claims court, so long as the matter remains in such court and advances only an individual claim for relief.

   ...

Thus, it appears clear that Plaintiff indeed agreed to submit any disputes which might arise under her credit card agreement to arbitration.

This does not end the matter, however, for Plaintiff's complaint alleges that her dispute with Defendant does not arise with respect to *her* credit card account but rather that the calls which she received concerned certain issues which arose with respect to her *son's* account. Inasmuch as the arbitration agreement does not appear to cover this situation, and given that a court may order arbitration of a particular dispute only where it is satisfied that the parties agreed to arbitrate *that dispute*, we cannot make the requisite finding based on the presently-existing record that this matter is properly within the scope of the arbitration clause contained within Plaintiff's cardholder agreement. See, e.g., Cardionet, Inc. v. Lifewatch Services, Inc., 751 F.3d 165, 172 (3d Cir. 2014). We are therefore compelled to deny the motion to dismiss and/or to compel arbitration, albeit with the proviso that Defendant is free to re-raise the matter of arbitrability by filing a motion for summary judgment following the taking of discovery on the issue.

An order follows.